UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNIVERSITY OF CINCINNATI,
    Plaintiff,

vs.

RED CEDAR SOLUTIONS GROUP, INC.,
    Defendant.

Case No. 1:14-cv-458

Litkovitz, M.J.

**ORDER**

Plaintiff University of Cincinnati (the University) brings this diversity action pursuant to 28 U.S.C. § 1332 against defendant Red Cedar Solutions Group, Inc. (Red Cedar), raising Ohio state law claims of breach of contract, breach of express and implied warranties, promissory estoppel, and unjust enrichment. (Doc. 1). In its answer to the University's complaint, Red Cedar raised counterclaims of breach of contract, unjust enrichment, and promissory estoppel. (Doc. 7). This matter is before the Court on the University's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss Red Cedar's counterclaims (Doc. 15), Red Cedar's response in opposition (Doc. 20), the University's reply memorandum (Doc. 23), and Red-Cedar's sur-reply (Doc. 35).

**I. Background**

The University initiated this breach of contract action in June 2014. The complaint alleges that the University entered into a contract with Red Cedar whereby Red Cedar was to provide software programming services and create a program intended to assist the University's College of Education, Criminal Justice, and Human Services in providing services to out-of-state juvenile justice systems. The University had access to the software during the development period by way of a virtual testing environment and it raised concerns to Red Cedar about the quality and functionality of the software. The University alleges that Red Cedar responded by

shutting down the testing environment without notice and refusing to restore it upon the University's request. On the occasions where the University identified software errors to Red Cedar, Red Cedar required additional monies to correct them. The complaint further alleges that Red Cedar made representations on multiple occasions that the software was completed; however, the University learned on testing that the software was incomplete or did not function as expected. The University informed Red Cedar in 2013 that it was terminating the contract. The University alleges that it paid more than $200,000 to Red Cedar under the parties' contract for software that was unusable. The University claims in addition to monetary damages, it has suffered reputation damages as a result of Red Cedar's failure to deliver software that met the University's criteria. The University therefore alleges that Red Cedar violated the terms of the parties' contract and breached its express and implied warranties to provide software that was, *inter alia*, free from defect and of good quality. The University further alleges that it relied on Red Cedar's promise and was damaged as a result of Red Cedar's failure to deliver functional software. Lastly, the University alleges that Red Cedar has been unjustly enriched as it would be inequitable to allow Red Cedar to retain the monies paid to it by the University in light of the quality of the software provided. (Doc. 1).

In August 2014, Red Cedar filed its answer to the University's complaint and raised breach of contract and promissory estoppel-unjust enrichment counterclaims. Red Cedar's counterclaims allege that the University stopped paying its invoices in or around February 2013 in violation of its contractual obligations and that Red Cedar is owed approximately $30,000 from the University. Red Cedar also maintains that because of the University's refusal to pay this amount, Red Cedar has not yet submitted additional invoices for several other projects; the amount due under these invoices is approximately $115,000. Red Cedar's breach of contract and

promissory estoppel-unjust enrichment counterclaims are premised on the University's alleged failure to comply with its contractual obligations. (Doc. 7).

The University moves to dismiss Red Cedar's counterclaims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The University contends that Red Cedar's counterclaims must be dismissed because the University is entitled to sovereign immunity as an arm of the state and, therefore, the counterclaims are barred by the Eleventh Amendment. The University maintains that it has not waived its sovereign immunity because it has not consented to jurisdiction in the federal courts for Red Cedar's Ohio law counterclaims. The University contends that pursuant to Ohio Rev. Code § 2743.02, the proper venue for Red Cedar's counterclaims is the Ohio Court of Claims. (Doc. 15).

Red Cedar responds that the University waived its sovereign immunity by raising its Ohio state law claims in this federal Court. Red Cedar notes that the University previously made an improper attempt to remove this matter to the Ohio Court of Claims, but the petition for removal was denied because Ohio state law does not permit removal of matters filed in federal court. *See* Docs. 13, 14. Red Cedar maintains that the instant motion to dismiss is an equally improper attempt to avoid this Court's jurisdiction. Citing *Lapides v. Bd. Of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613 (2002) and the holdings of various Circuit Courts of Appeal, Red Cedar contends that the instant motion must be denied because the University's voluntary act of filing its lawsuit in this federal Court amounts to a waiver of its Eleventh Amendment immunity as to Red Cedar's compulsory counterclaims under Fed. R. Civ. P. 13. Further, Red Cedar asserts that because its counterclaims are compulsory, allowing the University to assert sovereign immunity would be unjust as Red Cedar may be forever barred from asserting its counterclaims if they are not raised in this federal Court. (Doc. 20).

In its reply memorandum, the University asserts that *Lapides* – where the Supreme Court held that a state waives its Eleventh Amendment sovereign immunity by voluntarily invoking the jurisdiction of a federal court – is distinguishable from the instant matter and, hence, not controlling because the state in that lawsuit had enacted legislation specifically waiving its immunity to suits in state courts. The University cites to several cases in support of its assertion that its voluntary act of filing its state law claims in this Court does not constitute a waiver of its immunity from Red Cedar's counterclaims. The University reiterates that under Ohio statutory law, the Ohio Court of Claims has exclusive jurisdiction over these counterclaims. (Doc. 23).

Red Cedar requested and was granted leave to file a sur-reply. (Docs. 28, 34). Red Cedar argues that the cases cited by the University in its attempt to distinguish *Lapides* are inapt because, unlike here, those matters did not involve state law claims. According to Red Cedar, this distinction is key because under Ohio statutory law, the State of Ohio has waived its immunity from state-law contract claims by allowing such matters to be brought in the Ohio Court of Claims. Red Cedar asserts that this statutory waiver, coupled with the University's voluntary act of filing the instant federal lawsuit, establishes that the University has waived its right to assert Eleventh Amendment immunity as to the counterclaims. (Doc. 35).

**II. Standard of Review**

There are generally two types of motions challenging subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citations omitted). A Rule 12(b)(1) motion can attack a party's claim of jurisdiction on its face or the motion can attack the factual basis for a claim of jurisdiction. *Id.* A facial attack questions the sufficiency of the pleading. *Campbell v. Miller*, 835 F. Supp.2d 458, 463 (S.D. Ohio 2011)

4

(citing *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)). When reviewing this type of challenge to the court's jurisdiction, the court must take the allegations in the complaint or counterclaim as true and construe the pleading in a light most favorable to the non-moving party. *Id.* (citing *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999)). "[U]nlike subject-matter jurisdiction, the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity." *Nair v. Oakland Cty. Cmty. Mental Healthy Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (citations and quotations omitted).[1]

The University's challenge to the Court's subject matter jurisdiction on the basis of sovereign immunity under the Eleventh Amendment to the United States Constitution is properly construed as a facial attack. *See Sims v. University of Cincinnati*, 46 F. Supp.2d 736, 737 (S.D. Ohio 1999) (holding that a subject matter jurisdiction challenge under the Eleventh Amendment constitutes a facial attack). Accordingly, the Court shall take as true Red Cedar's allegations in support of its counterclaims and the University bears the burden of establishing that it is entitled to sovereign immunity under the Eleventh Amendment. *Nair*, 443 F.3d at 474; *Campbell*, 835 F. Supp.2d at 463.

### III. Resolution

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

---

[1] In its motion to dismiss, the University incorrectly asserts that Red Cedar bears the burden of establishing that this Court has subject matter jurisdiction over the counterclaims at issue. *See* Doc. 15 at 2 (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). However, the *Rogers* matter cited by the University did not involve an asserted Eleventh Amendment sovereign immunity defense and the Sixth Circuit has conclusively determined that "the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity. . . ." *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 936 (6th Cir. 2002) (citing cases).

U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment provides immunity to the states from suits brought in federal courts by its own citizens or by citizens of another state. *See Hans v. Louisiana*, 134 U.S. 1 (1890). *See also Central Virginia Cmty. College v. Katz*, 546 U.S. 356, 380-81 (2006). This immunity extends to any entity that is an "arm of the state." *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Because the State of Ohio created the University as a state university, *see* Ohio Rev. Code § 3361.01, it is an "arm of the state" entitled to assert Eleventh Amendment immunity. *See Mt. Healthy*, 429 U.S. at 280. *See also Sahm v. Miami Univ.*, No. 1:14-cv-698, 2015 WL 93631, at *4 (S.D. Ohio Jan. 7, 2015).

There are, however, well-established exceptions to a State's sovereign immunity. For example, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court by making its intention unmistakably clear in the language of the statute." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985). Further, "a State's sovereign immunity is 'a personal privilege which it may waive at pleasure'" by consenting to suit. *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (quoting *Clark v. Barnard*, 108 U.S. 436, 447 (1883)). The issue presented by the instant motion to dismiss is whether this latter exception applies and, hence, whether the University's voluntary invocation of this federal Court's jurisdiction over its state law claims amounts to a waiver of its Eleventh Amendment immunity as to Red Cedar's state law counterclaims.

The decision to waive Eleventh Amendment immunity "is altogether voluntary on the part of the sovereignty." *Beers v. Arkansas*, 61 U.S. 527, 529 (1857). Accordingly, the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp.*, 473 U.S. at 241. Courts generally find waiver where the

6

State voluntarily invokes the jurisdiction of a federal court, *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284 (1906), or where the State clearly declares its consent to same. *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944). It is not enough that a State consents to suit in courts of its own jurisdiction; there must be some voluntary act establishing the State's intent to subject itself to a federal court's jurisdiction. *See Atascadero State Hosp.*, 473 U.S. at 241 ("Although a state's waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment.").

The Court finds that the University has waived its Eleventh Amendment immunity as to Red Cedar's counterclaims. By voluntarily initiating this action in federal court on the basis of diversity jurisdiction and raising state law contract claims against Red Cedar, the University consented to this Court's judicial determinations on both its claims and Red Cedar's compulsory counterclaims.[2] *See Lapides*, 535 U.S. at 619 (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883) ("[M]ore than a century ago this Court indicated that a State's voluntary appearance in federal court amounted to a waiver of its Eleventh Amendment immunity.")). *See also Gardner v. New Jersey*, 329 U.S. 565, 574 (1947) (a State "waives any immunity . . . respecting the adjudication of" a "claim" that it voluntarily files in federal court); *Gunter*, 200 U.S. at 284 ("where a state *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.") (emphasis added); *Lawson v. Shelby Cnty., Tn.*, 211 F.3d 331, 334 (6th Cir. 2000) (citing *Clark*, 108 U.S. 436) (a State waives its Eleventh Amendment immunity and consents to suit by voluntarily appearing in federal court)).

---

[2] Red Cedar's counterclaims (breach of contract, promissory estoppel, and unjust enrichment) are compulsory and not permissive counterclaims as they arise out of the same transaction or occurrence that gave rise to the University's claims. *See* Fed. R. Civ. P. 13(a). Notably, the University does not dispute the compulsory nature of Red Cedar's counterclaims.

7

The University voluntarily invoked the federal jurisdiction of this Court and thereby waived its sovereign immunity as to the Court's adjudication of the University's claims as well as to Red Cedar's compulsory counterclaims. *Lapides*, 535 U.S. at 619-20. In analyzing sovereign immunity issues in cases with similar procedural conditions, Circuit Courts of Appeals have held that where a state voluntarily commences an action in federal court, the state waives its Eleventh Amendment immunity as to any compulsory counterclaim that is asserted in that action. *See Bd. of Regents of the Univ. of Wisc. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 461-62, 471 (7th Cir. 2011) (applying the rationale of *Lapides* and finding that the state waived its Eleventh Amendment immunity to compulsory counterclaims by voluntarily filing an original action in federal court); *Tegic Comm's Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1342-43 (9th Cir. 2006) (where the State files suit in district court, it waives Eleventh Amendment immunity as to that suit in that court as well as to any compulsory counterclaims); *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111, 1126 (Fed. Cir. 2003) ("when a state files suit in federal court to enforce its claims to certain patents, the state shall be considered to have consented to have litigated in the same forum all compulsory counterclaims, *i.e.*, those arising from the same transaction or occurrence that gave rise to the state's asserted claims."). *Cf. Kelley ex rel. State of Mich. v. Kysor Indus. Corp.*, No. 5:91-cv-45, 1992 WL 179519, at *1-2 (W.D. Mich. May 19, 1992) (holding that the State of Michigan had not consented to a waiver of its Eleventh Amendment immunity as to the defendant's counterclaims because the counterclaims did not arise from the same event underlying the State's claims). Here, by raising its state law claims against Red Cedar in this federal Court, the University "voluntarily invoked [this] federal [C]ourt's jurisdiction." *Lapides*, 535 U.S. at 620. Even more than the act of removing a matter from state court to federal court as was the case *Lapides*, the University's

8

choice at the outset of litigation to bring its state law claims in this federal Court demonstrates its voluntary waiver of Eleventh Amendment immunity as to both its claims and Red Cedar's compulsory counterclaims. "The animating principle of *Lapides* is that a state should not reap litigation advantages through its selection of a forum and subsequent assertion of sovereign immunity as a defense." *Bd. of Regents of Univ. of Wisc. Sys.*, 653 F.3d at 466.[3]

The University voluntarily initiated this lawsuit in this federal Court asserting state law claims against Red Cedar related to the parties' contractual obligations; it was not hailed into this forum as an unwilling participant. Nevertheless, it now seeks to assert sovereign immunity in an effort to bar Red Cedar from raising compulsory counterclaims in this venue. As the Supreme Court has stated:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand. And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.

*Lapides*, 535 U.S. at 619. In this case, "seriously unfair results" could prevail if the University were allowed to prosecute its state law contract claims against Red Cedar in federal court and, at the same time, assert sovereign immunity from Red Cedar's compulsory counterclaims.

---

[3]The University argues that *Lapides* is distinguishable from the instant matter because "the state legislature in Georgia specifically waived that state's immunity to suit in state courts for the type of state-law claims brought in that action. . . . [and n]o such legislative abrogation of immunity is present here." (Doc. 23 at 1-2). Yet, the State of Ohio has waived its immunity from state court proceedings for the types of claims asserted by Red Cedar. *See* Ohio Rev. Code § 2743.02. *See also Schwarz v. Bd. of Trustees of Ohio State Univ.*, 510 N.E.2d 808, 811 (Ohio 1987) (holding that "pursuant to R.C. 3335.03 and 2743.02(A)(1), an action in contract may be brought against" Ohio state universities). Thus, the University's claim that the State of Ohio has not legislatively abrogated its sovereign immunity from contract claims such as Red Cedar's is inaccurate. To the extent the University appears to assert that *Lapides* is distinguishable because the Georgia statute provides that immunity is waived "with respect to actions brought in the courts of the State of Georgia," Ga. Code Ann. § 50-21-23(b), while the Ohio statute requires such claims to be brought specifically in the Ohio Court of Claims, *see* Ohio Rev. Code §2743.02(A)(1), this assertion is not persuasive. The University has not developed this argument or cited to any authority that would warrant the Court's eschewing of *stare decisis* and departing from the century-old holding acknowledged in *Lapides*. *See Lapides*, 535 U.S. at 619 (citing *Clark*, 108 U.S. at 447) ("[More than a century ago this Court indicated that a

"[B]ecause a state as plaintiff can surely anticipate that a defendant will have to file any compulsory counterclaims or forever be barred from doing so, it is not unreasonable to view the state as having consented to such counterclaims." *Regents of the Univ. of N.M.*, 321 F.3d at 1126. In consideration of the University's voluntary invocation of this federal Court's jurisdiction and the principles inspiring the Supreme Court's holding in *Lapides*, the undersigned finds that the University has waived its Eleventh Amendment immunity as to Red Cedar's compulsory counterclaims.

Accordingly, the Court finds that by filing the instant lawsuit and asserting state law claims against Red Cedar in federal court, the University consented to having this Court litigate Red Cedar's compulsory counterclaims and, thus, waived its Eleventh Amendment immunity as to those counterclaims.

### IV. Conclusion

For the above reasons, the University's motion to dismiss Red Cedar's counterclaims (Doc. 15) is **DENIED**.

Date: 2/20/15

Karen L. Litkovitz
United States Magistrate Judge

---

State's voluntary appearance in federal court amounted to a waiver of its Eleventh Amendment immunity.").

10